Good afternoon. Will the attorneys who are going to argue this case please approach the podium. Identify yourselves and the party that you represent and indicate to the court how much time you would like for your argument. Good afternoon, your honors. My name is Milo Lundblad. It's L-U-N-D-B-L-A-D and I'm here for the plaintiff appellant Thomas Miner. If I could reserve five minutes for rebuttal please. Very well. Good afternoon. My name is Mark Mordini. I represent the defendants in the appellate. Very well. Thank you. I'll take the same time. Mr. Lundblad. Thank you, your honors. May it please the court, counsel. There are two issues that are before you today based on our appeal. I'd like to address the closing argument issue first. As a trial lawyer I know that trial lawyers live for giving closing arguments, that we start thinking about closing arguments from the day our client walks in the door, the night before we practice in front of a mirror or in front of our spouses. And the closing argument is an important aspect of the trial because the jury has heard fragmented evidence over several days and it's the opportunity for the lawyer to put evidence in perspective. And also in every trial the jury has to decide who to believe or who not to believe. And the credibility of witnesses, which is peculiar to the province of the jury, is a very important argument that every trial lawyer addresses. Now the trial judges and appellate courts give fairly wide latitude to what attorneys can argue, but there are boundaries. And in this particular case it's plaintiff's position that defense counsel in his closing argument went far beyond the accepted boundaries, made inflammatory prejudicial arguments to the jury that denied Mr. Minor a fair trial. And so he asked that he be given a second trial. There are two aspects of argument that plaintiff believes were improper and prejudicial. The first one concerns comments that were made about the plaintiff himself. Now in a closing argument it's certainly permissible to point out reasons why a certain witness should not be believed, such in a plaintiff's situation whether or not their rendition of the facts makes logical sense, whether the plaintiff has given versions that are differing, whether he has said something different in a deposition. Those are all fair game. However, even when discussing the credibility of a plaintiff or any witness, the argument has to be based on fact. In this particular case it appears that counsel attempted to crawl inside the mind of Mr. Minor and he gave a story about how he believed that Mr. Minor, who was 85 years old at the time of his fall, was embarrassed by the fact that he clumsily tripped perhaps because of his older age and that he felt embarrassed and to assuage his ego he decided to blame somebody else. And so at the end of this little story, counsel then said that he believes that plaintiff, in his mind, created this alternate fact situation where he didn't think it was his fault. You know, that could have gone the other way, too. That could have offended, because I probably would have been offended as a juror to hear something like that. It could have offended, but I think in part he was carefully crafting this story to avoid being offensive by suggesting that Mr. Minor made these allegations that he slipped on a slippery substance, a wet floor, because of his embarrassment, that it was sort of a story with a parable that would try not to offend but put the point across that Mr. Minor was trying to deflect blame from himself to somebody else. But regardless, that's not proper argument. It's not proper for an attorney to say, in my opinion, you should not believe this witness because. Didn't the trial court sustain the objection and instruct the jury properly? The trial court did sustain the objection and did give an instruction. However, I think that this court would recognize that you can't unring the bell. You can't, even though I know jurors do their best to try to follow the court's rules and admonitions. But I don't believe a jury could put it aside totally and come back and listen and decide the case solely on the facts. Yeah, but, I mean, even the jury instruction, I mean, I don't believe that the jury instruction   instruct the jury. This is so anticipated because it happens all at a time. It instructs the jury if any statement or argument of an attorney is not supported by the law or the evidence, you should disregard that statement or argument. They're told that in general. The record didn't show whether it was said at the beginning of the trial. I always did that. I assume they did. But it definitely was given as part of the instructions immediately after this closing statement. And then it was they were instructed at the time. I don't know. Sure. Your Honor, if that were the case, then more likely than not, it would never be a case that would be reversed because of what counsel said and if an objection was made. I think we have several examples that were cited by the plaintiff in his brief. For example, in Regan v. Visas, the infamous comment that an expert was like pallet and have medicine will travel. I believe the record showed that an objection was made and the court sustained it. Likewise, in Cecil v. Gibson, the defense lawyer who was trying a case downstate against a Chicago lawyer made references that the Chicago attorney was a slick attorney from Chicago, that he had with him his hired hand, his sidekick, who was like Cisco kid in poncho. And I believe the opinion reflects that objections were made, objections were sustained, and the jury admonished. However, in each of those cases, the court, the appellate court, the reviewing courts, found that the prejudice caused by those comments warranted granting the party, the plaintiff, a new trial. And I believe that's what has occurred here. Another example is Kearns v. Lennox Machine, where the defense counsel criticized the plaintiff's expert, called him a Monday morning quarterback, and that he resented some witness like the expert coming into court and that he had emotions against such witnesses. And the record shows, I believe the record is quoted in verbatim in that case, and the opposing counsel, plaintiff's counsel, objected.  Instructions were given. Yet again, the reviewing court found that the prejudice could not be undone and that a new trial was warranted. And just to touch upon the fact that counsel exacerbated the situation with his comments regarding Dr. Rohde, a damages expert, it is clear, I believe, from the argument that he made when he said, I can't use that language, that what he wanted the jury to think is that he was not going to say prostitute in front of them. But when he goes on to say that the witness was paid and paid by the plaintiff to give certain testimony, that's the clear implication. And in Regan v. Visa, Cecil v. Gibson, comments such as that are clearly outside the acceptable boundary of closing argument and warrant new trial. Was there an objection after that, we know what Dr. Rohde is? Dr. Rohde was a medical... No, no, no. Was there an objection? No, there was a statement that counsel made in closing. We know what Dr. Rohde is. I can't use that language. On and on. But the record didn't show an objection. That's true. There was not an objection made at that part. However, there are cases where, I'm trying to remember which among Cecil, Kearns, or Regan, where an objection wasn't made and the court found that it was clear-air such comments. And, again, it warranted a new trial. And even, I think, equally if not more prejudicial, a comment was made that painted the image that plaintiff's counsel and Dr. Rohde met together in their office and decided what testimony Dr. Rohde had to give, what evidence they needed, and that then Dr. Rohde was paid to give that testimony. And, again, that's clear black-letter law that in a closing argument you cannot impugn the reputation or character of an attorney, which I believe such comments do. So I believe for that reason alone, Mr. Minor should be granted a new trial. The second issue before the court concerns spoliation of evidence. The facts are undisputed that at the time of the occurrence, the building had multiple cameras that were videotaping the events that occurred in the lobby where Mr. Minor fell. Mr. Minor, the tape, however, was re-taped over before Mr. Minor hired an attorney and before that attorney sent a letter asking the building to preserve the tapes. The question is whether or not under the Supreme Court cases on this issue, namely the Keeley case, Martin v. Keeley and Sons, whether the facts in this case, as alleged in the complaint, created special circumstances that would have required the building to have kept that tape, kept that evidence. First of all, I'd like to just point out, again, from personal experience, that 30 years ago I had a case where the incident occurred as part of a dirt car race and it was filmed by ESPN. So it was the first time that I actually had a video of the crash that led to the lawsuit. Today, 30 years later, it's very common now to have videos because of the ubiquitousness of video cameras that everywhere you go there are security cameras. And if you search hard enough, you're likely to find a camera that has captured an incident or accident. Not to get back to the first issue, but I thought counsel's experience shouldn't come into this. I was going to. I was just trying to put it in context. Here, it's alleged and the record shows that immediately after Mr. Minor fell, one of the security people at the building came over to assist him. And that same security person, with the help of somebody else, they prepared an incident report. And in that incident report, it discusses how wet floor signs were put out and we didn't see any evidence of water. Now, I went through the record. I could not find the incident report in the record. Now, it was mentioned that it was exhibit A to the motion in limine and it was mentioned that it was attached to something else, but it never made its way into the record. So as far as I'm concerned, I don't know what the incident report. The count eight said they were put on notice by virtue of documented incident reports. I don't even know what a documented incident report is. But anyway, so unless it's in the record, you can tell me where it is in the record and I missed it. I could not find it. Standing right here right now, I can't tell you. It was not attached to the complaint. That's true. It was not attached to the complaint. And 606 says it should be, if you're relying on a document, it should be attached. Okay. In any event, though, it's undisputed based on the pleadings that there were an incident report, and I think it refers to multiple incident reports, plural. Doesn't that just indicate that they had noticed that an accident occurred? So now you have an accident. The property owner is notified of the accident. And you're saying that that's enough to cause the punitive defendant to retain the videos? Yes. I mean, I believe that under those circumstances. Under Illinois law? Well, under. . . I realize there's a Tennessee case there and so forth, but under Illinois law? Right. You're correct. Under Martin v. Keeley, the Illinois Supreme Court has said that you have to have something plus just having noticed. Special circumstances. Correct. Or a personal undertaking. Right. What's the plus? What's the plus? Well, they were certainly advised, or the allegation is that they were told about the incident, that they had the report showing that an incident occurred, that there was a slip and fall. And it goes back to perhaps what the law should recognize, is that surveillance cameras are now another mechanical witness, no different really than if we had Nancy Jones standing there who saw it, that we have a camera which takes down objectively and records what happened, that any entity that knows they have security cameras, knows the slip and fall occurred on the premises, and knows that incident reports were filed relating to that slip and fall, that that information should be enough to trigger an obligation, a duty to preserve that evidence, preserve the images that have been captured by the surveillance camera. And it does when there's a request made. Correct. I mean, yes, that's true. However, under the Bobbery case that came after Martin, the court there found that there was a plus in that the plaintiff, in that case, had advised Enterprise that there was some mechanical defect in the car they were operating at the time of the crash. And the court held that that was a sufficient plus. There was a little bit more there, though. They advised them prior to the accident and also, again, after the accident. So it was a little bit more in that case. All right. But there was the plus in that there was information given to Enterprise that there may have been a defect in the automobile that they had rented to the plaintiffs. I mean, here. Putting all that aside for a second, did the court dismiss the case without prejudice? Dismiss the claim, the expoliation claim without prejudice? Right. But there was never an amended complaint filed. Is that correct? In our case? Yes. Oh, that's correct. And the reason that no amended complaint was filed is that based on the hearing and the court's ruling when the complaint was dismissed, the one that made the allegation of the expoliation of evidence, that the court, the judge, made it very clear that he thought that the only way Martin could be met would be if there was evidence that a formal request for preservation had been made prior to the destruction of the tape. And we know that the accident happened June 6th, and it wasn't until early September that the formal request was made. And according to the affidavit submitted in support of defendant's motion, the tapes would have been taped over within 30 days so that they would not have received the preservation request before the tapes had already been destroyed. So amending the complaint, there was nothing to add as far as having evidence or allegation that a formal request had been made because it wasn't made until after the evidence had already been destroyed. So that was the reason why a decision was made not to amend. The position was that the allegations in the complaint stating that there had been a slip and fall on the premises and that incident reports had been prepared, which gave the defendants notice of the incident, that would have been the special circumstances or sufficient special circumstances that would have required the defendants to preserve the tapes. So thank you. Thank you. Mr. Mordini. Thank you, Your Honors. Please record, counsel. You know, I have listened to what counsel had to say. And I guess I'll take it the same direction or the same path that counsel took. Start out with the closing arguments. I believe that the cases that counsel is referring to for the most part, such as like Reagan, is talking about comments being directed and talked about concerning a treating physician as opposed to a hired expert. In terms of Cecil. In Cecil, the attorney was literally attacking the plaintiff's attorney and indicating that the plaintiff's attorney had told the expert what to say. Kearns, I think, is very off base because there are multiple reasons for the court overturning that verdict. But I'm going to jump back to the facts of this case because it is important. And, you know, what counsel started out talking about was, you know, about videotaping and whatnot. Well, I would submit this. This accident happened on June 6, 2013. From June 6, 2013 up until now, there's been quite a difference in terms of technology, in terms of videos. Back even, you know, five or six years ago, it was common practice to basically flip over that video every day. And now there's better technology, better equipment, a better way to preserve that. But I feel like, and now I guess I've jumped to the spoliation issue, I guess, but I feel like it's a slippery slope. If you start to say, okay, well, you know what, we're going to say that this is a special circumstance because he wrote up a report or two reports, incident reports. What's the chilling effect on corporations, big or small, in terms of what do they have to preserve then? Do they have to preserve the, let's say, let's take an instance like this with a fall down. Do they have to preserve that one minute of time? Or what happens if the plaintiff's attorney says, you know what, we actually needed the entire day. Should they have kept those videos for the entire day? What happens if the attorney says, you know what, we actually wanted you to keep the videos for two days, and for two days before the accident. So where does it end, and where do you draw a line in those circumstances? And that's why the trial court in our case, I believe, ruled the way he ruled. The plaintiff in our case was not an ignorant, and is not an ignorant person. He's been an attorney for years and years and years. This is a man whose, you know, best friend was George Bush Senior growing up, and he worked with him and for him, okay? So he's not illiterate, he's not stupid. He was working at the time and had worked at this building for five years. He was, and I got to know him actually through this case, because he would show up at the depositions, at every deposition almost. Let's get back to the case. Okay. I'm sorry. Because part of the problem is your tendency to speak about your personal experience. We don't want that. All right. But, okay, so in terms of the spoliation issue, I believe that the court has directed the right questions at counsel for the plaintiff. One, and one of the main things is why would you, if you were intending on bringing this claim, why would you wait until after discovery had closed? All discovery had closed in this case, and there was a trial date pending. There was originally a trial date that was pending in October, which ended up getting kicked because of the plaintiff's health until January of 2018. That was waited until two months, approximately two months before trial, and after all written discovery, oral discovery had been done, before even attempting to file a claim about spoliation. And all of the witnesses that they took depositions of in terms of their discovery never brought this issue up in any way, shape, or form. Are you saying they waived it? I'm not saying they waived it. I'm just saying that, I mean, you can't, I guess you can't really say that they waived it, but what I'm saying is that if it was an important issue to them, if it's an important issue to a party in a lawsuit, you would think that actions would have been taken certainly differently. But we can't decide this based on the importance of the issue to the parties. But what I'm saying is that don't fall back then and say, well, we couldn't get this done or we couldn't provide this, which is what they said in terms of why after the court denied their motion, or after the court granted my motion to dismiss the trial court and gave them an opportunity to file an amended complaint, they didn't do so because they had no facts to support it. So the idea is if they thought that they could have obtained those facts, they should have done so in discovery prior to this point in time. So I think it's somewhat of a rabbit hearing in that regard. Nothing was done after the court, and the court made it very clear that he was making this decision and giving them an opportunity and welcomed an opportunity to revisit that issue. They brought another motion, which they never did. In terms of my closing argument, I tend to speak my mind, okay? And I know that, you know, I've tried probably over 150 cases in front of juries. This Dr. Roe was probably one of the worst experts I've ever come across in terms of being completely unprepared. His testimony virtually was – The question is, are you entitled to inject your personal opinions into your argument before the jury? No, yes, you're right. But I believe that you are allowed to address the credibility of a witness. And that's what my attempt – what I was attempting to do. In your closing argument, I found it kind of amusing in the sense that you start out by apologizing because, you know, you say you're cocky and you may come off a little bit harsh. And then you finish up by apologizing. Again, I apologize if you think I was rude. So you pretty much knew where you were going, I'm guessing, just from beginning to end. Well, my wife says so. And I think what you're doing here is even appropriate because you're telling us how terrible it was, even as you stand here today. Whereas that's not your purpose here today, to tell us how terrible it was. Your purpose here today is to justify what was already done, maybe, and say that it was not error, it was not clear error to have done what you did. But not to tell us again how terrible it is. Okay. So do that. Okay, but what I'm trying to – the point I'm trying to make is that I was making arguments based upon the evidence, okay, based upon the testimony that this physician provided, which were in direct conflict with not only the testimony that the plaintiff provided, but the testimony of, like, Dr. Zielinski provided. His family doctor provided. And drawing these inferences to show – You're arguing the wrong issue. Okay. The issue is whether or not what happened during the closing rises to the error that this court should reverse, not for you to again tell us why you said what you said. So you're arguing the wrong point. But let's move past that. Okay. Because what I want to get to is this formulation of the claim. Okay. It's clear in Illinois that there's no duty to preserve without special circumstances or without a voluntary undertaking. Correct? Correct. They are arguing that the special circumstances was the incident report. In fact, not just one incident report on the day of the accident, but there was also a second incident report done on the next day. And the argument that counsel is making now is that this case has no special circumstances. So why don't you respond to that? That way you're speaking about something that's actually relevant to the case and not how bad these factors were. All right. All right. I apologize. Apologize for that. I do. But, you know, it brings us back to the case law, and it brings us back to the fact that that has been, I believe, has been ruled upon and has been talked about that the filing of an incident report, it doesn't arise to that being a special circumstance. If that was the case, every single time there's an incident in a store, a grocery store or a clothing store or anywhere else where somebody takes the affirmative action, a defendant or a business of getting an incident report, they are now put in a position, if the law were to change X, Y, Z. Okay? And the incident report isn't... I just saw that statement with the robbery case that counsel said. Oh. Well, because here, in that case, and I think you brought it up, this was a vehicle. The facts were so much different. This was a vehicle where there was complaints made about the vehicle and the driving of that vehicle. And it's conditioned prior to the accident happening as well as after the incident happening. And that vehicle, by the defendant's own knowledge and testimony, there was a segregation of that vehicle. That's per the defendant's testimony in that case. Okay? And the defendant's testing on that vehicle. It's completely different than the facts in our case. The facts in our case is that, you know what, somebody is... There's an incident that happens in the lobby, and you have the security guard standing right there and another witness standing off to the side. You're going to ask them if they want to fill out a report. And that's the purpose of that report is to document that, in fact, something occurred so that somebody can't come up later and say, well, you're saying that it happened, but we have no knowledge and no ability to say that it did happen. That protects the plaintiff in that regard. But you're talking about jumping from that position to then putting this additional burden on any facility. Okay? Whether it be a drugstore, whether it be, you know, a big building, whether it be a house. Okay? Somebody's home. You're putting an additional burden on them that the law doesn't see and doesn't appreciate, even as we get better with technology. But the fact of the matter is, and again, I want to keep this in mind, this was not recent time. This was in 2013. Okay? But the issue then becomes... Okay? So what will stop them from saying, you know what? You only saved four minutes or five minutes of the video. We needed to know what was going on in the hours leading up to it. Or we need to know what was going on in the hours following it. So like I said before, it's a slippery slope when you get into that position. And that's why I think the law is how it is today, and it should stay that way. I don't think that this case is a case to alter the law with regard to preservation of evidence or preservation of videos of that nature. There's a simple... The simple fact of the matter is, is that that special circumstance could have been appreciated, could have been obtained had the plaintiff, who is, like I said, is an attorney and had been an attorney for 40 years, who went and filled out two reports. All he had to do was say, I need you to save the tape. I need you to keep this portion of the video or... He would have said four days, they would have probably done that. Okay? But that didn't occur here. What occurred here was he filled out these two reports and gave differing versions of the accident. By the way, as you know, he gave three different versions. One, he fell inside the elevator. Two, he fell while walking to the elevator. And three, he fell while walking to the escalator. So different directions, different locations. But all he had to do to preserve it was to say, save it. It waited 60 days. It waited until September to request. Okay. I think we understand the point. Anything else you'd like to raise? No. No, Your Honor. That's fine. Thank you. Thank you. Counsel, briefly? Just a couple of points. One, to address some of the questions you had, Justice Walker. I would agree that if there had been no incident reports and the first request or first knowledge of the incident came through the letter that was sent in September, there would be no special circumstances. But I think that you are... I believe in this circumstance where two or multiple incident reports were filed, that in and of itself should have put the defendant on notice that they needed to save the video that showed what happened. And as far as chilling effect, I mean, the allegation... The problem was, as Justice Griffin raised at least twice during this hearing, incident reports are not even a part of the report. They weren't even attached to the complaint. So that's sort of the backdrop to the argument. That's the problem with your argument. I think when Justice Griffin asked you the direct question, where can we find it, I believe you admitted that we probably can't. Well, I said I can't tell you standing here right now where it is in the record. I cannot cite a page to the record. But in any event, you're saying that because there were two incident reports, that is equivalent to special circumstances, which should have put the burden on them to maintain the videos. Correct. Right. Other than two incident reports, you don't really have any case law to support that that is a special circumstance that didn't rise to the duty of the court. Right. There are other jurisdictions that have found that. Judiciary reporters hold those special circumstances. Well, they've sort of nibbled at the edges. There hasn't been a real solid definition. It's kind of special circumstances, as Brennan said, what I do to see. But you know when you see it. Right. And I guess the other rhetorical question is, you know, they have the video cameras there to provide them with information in the event they needed to protect themselves from some event occurring there. So it would seem that if you if the defendant got two incident reports, that that should trigger them to have kept it or trigger an obligation to keep it. Just going back for a moment. Briefly, please. With regard to no objection made and yet closing arguments still can result in a new trial, it's Cecil versus Gibson. No objection was made in that case. Thank you, Your Honor. Very well. Thank you both for your briefing on this issue. We'll take the matter under advisement. Thank you.